FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 17, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| PAMELA B.,[1]<br><br>                    Plaintiff,<br><br>        v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>                    Defendant. | No.   4:25-cv-05058-EFS<br><br><br>**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS** |

Due to degenerative joint disease, right ankle instability, vision loss, depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and headaches, Plaintiff Pamela B. claims that she is unable to work fulltime and applied for disability insurance benefits

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

and supplemental security income benefits.[2] She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ failed to consider the proper scales for substantial gainful activity pertinent to a blind individual; improperly analyzed the opinions of the medical sources, particularly the opinions of medical expert Dr. Schaffzin; erred in failing to find migraine headaches to be a severe impairment at step-two; erred in failing to properly consider recent medical evidence establishing that Plaintiff met or equaled a listing at step three; and improperly assessed Plaintiff's credibility. Additionally, Plaintiff argues that the ALJ's step-five finding was flawed due to these errors.  As is explained below, the ALJ erred. This matter is remanded for further proceedings.

---

[2] Plaintiff returned to what appears to be an accommodated work position.  AR 1346-1347.

# I.     Background

In March 2020, Plaintiff filed applications for benefits under Title 2 and Title 16, with both applications claiming disability beginning November 28, 2019, based on the mental impairments noted above.[3]

Plaintiff's claim was denied at the initial and reconsideration phases.[4] After the agency denied Plaintiff benefits, ALJ Jesse Shumway held a hearing in May 2022, at which Plaintiff appeared with her representative.[5]  Plaintiff and a vocational expert testified.[6] On August 3, 2022, ALJ Shumway issued an unfavorable decision, and Plaintiff appealed to the Appeals Council.[7] In May 2023, the Appeals Council denied Plaintiff's appeal, and he filed in this court.[8] In February 2024, this Court entered an order granting a stipulated

_____

[3] AR 242, 246, 248.

[4] AR 146, 158, 162.

[5] AR 43-73.

[6] *Id*.

[7] AR 12-42, 238.

[8] AR 1-6, 1446-1450.

motion brought by the parties to remand the case for further proceedings.[9]  On February 27, 2025, ALJ Shumway held a hearing at which Plaintiff appeared with her representative.[10] Plaintiff and a medical expert and a vocational expert testified.[11]

After the hearing, the ALJ issued a decision denying benefits.[12] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[13] As to medical opinions, the ALJ found:

- The opinions of non-examining medical advisor Lawrence Schazffzin, MD, to be entitled to significant persuasive value.

---

[9] AR 1451, 1453, 1454.

[10] AR 1370-1408.

[11] *Id*.

[12] AR 1340-1368.  Per 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[13] AR 1352-1354.

- The opinions of examining source Patrick Metoyer, PhD, to have partial persuasive value

- The opinions of examining source George Ankuta, PhD, to be somewhat persuasive.

- The opinions of treating source Brandon Hanley, DO; treating source Jesstine Kane, PAC; examining source David Morgan, PhD; and reviewing source Luci Carstens, PhD, to be not persuasive.

- The opinions of non-examining, state agency medical consultants to be partially persuasive.

- The opinions of state agency psychological consultants to be persuasive.[14]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2028. Plaintiff had engaged in substantial gainful activity during the following periods: 1) August 2019 through February 2020; 2)

---

[14] AR 1354-1357.

September 2021 through August 2022; and 3) June 2024 through the present. He found there had been a continuous 12-month period in which Plaintiff did not engage in gainful activity.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative joint disease of the right shoulder; recurrent left ankle instability; obesity; functional vision loss; depressive disorder; anxiety disorder; and PTSD.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments with specific consideration of Listings 1.18, 2.02, 2.03, 9.0, 12.04, 12.06, 12.07, and 12.15.

- RFC: Plaintiff had the RFC to perform a full range of light work but with the following limitations:

  [Plaintiff] cannot climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she can frequently balance, stoop, kneel, crouch, and crawl; she cannot reach overhead with the right upper extremity; she cannot be exposed to hazards such as unprotected heights and moving, mechanical parts; she cannot work on rough or uneven walking surfaces; she is limited to simple, routine tasks; she can have only superficial

contact with the public and coworkers; and she requires a routine, predictable work environment with clear, employer-set goals and no more than occasional changes.

- Step four: The ALJ made no finding regarding past relevant work and proceeded to step five.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a cleaner/housekeeper (DOT #323.687-014), marker (DOT #209.587-034), and router (DOT #222.587- 038).[15]

Plaintiff timely requested review of the ALJ's decision by this Court.

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[16] and such error

_____

[15] AR 1346-1358.

[16] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

impacted the nondisability determination.[17] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18]

---

[17] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[18] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

# III.  Analysis

Plaintiff seeks relief from the denial of disability on six  grounds. She argues the ALJ erred at step one by applying the income guidelines for a non-blind person rather than a blind one when determining SGA, erred in considering the medical opinions, erred in finding migraine headaches were not a severe impairment, erred in failing to consider recent medical evidence that Plaintiff met Listing 2.03, erred in his consideration of Plaintiff's subjective claims, and erred at step five as a result of his errors. The Commissioner counter-argues that the ALJ properly applied the non-blind income limits for SGA, properly considered the medical opinions and Plaintiff's credibility, and made no error at steps two or three.  The Court disagrees in part with the Commissioner. As is explained below, the ALJ's analysis of the medical opinion evidence contains consequential error and he failed to properly develop the record following a recent medical report indicating that Plaintiff likely suffers from glaucoma.

A.      **Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred by discounting the medical opinions of both treating medical sources and examining sources, instead giving greater weight to the opinions of the non-examining medical expert who appeared at the February 2025 hearing but was not able to review new medical evidence from a February 3, 2025 examination of Plaintiff by Marcus Kelley, OD.[19] The Commissioner argues the ALJ did not err in relying on the testimony of medical expert Dr. Schaffzin and argues that his failure to review Dr. Kelley's report was harmless because the report had no remarkable findings.

After considering the medical opinions in question, the medical evidence of record, and the reasons given by the ALJ to credit Dr. Schaffzin's opinions, the Court determines the Commissioner's characterization of Dr. Kelley's report as unremarkable is an error and because the ALJ relied on the testimony of Dr. Schaffzin, who did not review the report, his finding is not supported by substantial evidence.

---

[19] ECF No. 9.

1.    Standard

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[20] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[21] Supportability and consistency are the most important factors,[22] and the ALJ must explain how he considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[23] The

---

[20] 20 C.F.R. § 416.920c(a), (b).

[21] *Id.* § 416.920c(c)(1)–(5).

[22] *Id.* § 416.920c(b)(2).

[23] *Id.* § 416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

DISPOSITIVE ORDER - 11

ALJ may consider, but is not required to discuss the following additional factors: the source's relationship to Plaintiff such as length of the treatment, purpose of the treatment relation and whether the source examined Plaintiff, as well as whether the source had advanced training or experience to specialize in the area of medicine in which the opinion was being given.[24] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[25]  An ALJ is not required to articulate how they considered evidence from nonmedical sources using the requirements in paragraphs (a) through (c).[26]

　　2.　Dr. Schaffzin's Testimony

　　When he appeared to testify, Dr. Schaffzin stated that he reviewed the medical record up to Exhibit 32F and did not review

---

[24] *Id.* § 416.920c

[25] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[26] 20 C.F.R. § 416.920c(d).

Exhibit 33F.[27] Dr. Schaffzin stated that he found the 2019 examination of Dr. Hamilton at Exhibit 3F to be the most reliable evidence in the medical record.[28] Dr. Schaffzin cited to Dr. Hamilton's findings in the 2019 examination that Plaintiff's confrontation fields were intact although the Goldman fields were severely constricted, but opined that this was not likely the result of malingering, but was functional or non-physiological vision loss.[29]

### 3.    Relevant Medical Records

#### a. Dr. Hamilton

On February 11, 2019, Plaintiff was examined by ophthalmologist Stephen Hamilton, MD.[30] Dr. Hamilton completed a comprehensive eye examination.[31] Plaintiff presented with complaints that she had been

---

[27] AR 1372.

[28] AR 1377-1378.

[29] AR 1380-1381.

[30] AR 406-410.

[31] *Id.*

losing her vision in the last 2-3 months.[32] She had mild cataracts but surgery was deferred pending a diagnosis to explain her loss of peripheral vision.[33] Confrontation fields were full peripherally.[34] The right and left fields were constricted in a circle out to 20 degrees from fixation.[35] Dr. Hamilton opined that test results from a brain and orbital MRI were normal with no sign of demyelinating disease or enhancement of the optic nerves.[36]

Dr. Hamilton noted that subjective testing was variable with visual acuity of 20/60 in the right eye and 20/80 in the left eye that was 20/50 when pushed.[37] Dr. Hamilton also noted that the Goldman field was severely constricted in a functional manner, but the confrontation

---

[32] AR 406.

[33] *Id.*

[34] AR 408.

[35] AR 409.

[36] *Id.*

[37] *Id.*

fields were relatively intact.[38] Dr. Hamilton questioned whether there was a metastatic component due to Plaintiff's history of cancer and opined that the loss of peripheral vision might be functional and recommended referral to a cognitive therapist.[39]

    b. *Dr. Kelley*

    On February 3, 2025, Plaintiff was examined by optometrist Marcus Kelley, DO, of Montana Eyecare. At the request of the Commissioner.[40] Dr. Kelley completed a comprehensive eye examination.[41] Dr. Kelley noted that Plaintiff presented complaining of worsening vision and complained of struggling to drive at night or in overcast weather, headaches, and vision that is not clear either near or at a distance.[42]  On examination, Plaintiff's vision was 20/200 in the

---

[38] *Id.*

[39] AR 409-410.

[40] AR 3139-3144.

[41] *Id.*

[42] AR 3139.

right eye and 20/150 in the left eye.[43] Plaintiff reported that her vision had worsened dramatically in 2019.[44]

Dr. Kelley performed a SITA test to test the field of vision in Plaintiff's eyes.[45] Based on the test, Dr. Kelley diagnosed a generalized contraction of visual field, bilaterally.[46] Findings were as follows: OD [right eye] dense defect/contraction of visual field to 0 degrees nasally and inferior right quadrant and to 5 degrees superior right quadrant. OS [left eye] dense defect/contraction of visual field to 5-10 degrees from fixation."[47]

---

[43] AR 3140.

[44] AR 3142.

[45] Swedish Interactive Thresholding Algorithm (SITA) is a method to test for visual field loss, usually in glaucoma patients. *Characterization and Comparison of the 10-2 SITA-Standard and Fast Algorithms - PMC*, National Institute of Health, www.nih.gov (last viewed December 11, 2025).

[46] *Id.*

[47] *Id.*

Dr. Kelley diagnosed generalized contraction of visual field, severity mild; ocular pain in the left eye, severity mild; anatomical narrowing of angles (with elevated risk of glaucoma), with a severity noted as "urgent/emergent"; hypermetropia (farsightedness) bilateral and noted that glasses do not improve vision much; and presbyopia.[48] He noted that best corrected visual acuity was "much less than normal".[49] Dr. Kelley noted that with regard to Plaintiff's ocular pain, she should have an MRI of the brain both with and without contrast to rule out retrobulbar optic neuritis and any issues in the brain that would cause the dense visual field contraction.[50] With regard to angle closures, Dr. Kelley recommended a referral for a laser procedure, peripheral iridotomy.[51]

---

[48] AR 3143-3144.

[49] AR 3143.

[50] *Id*.

[51] Laser peripheral iridotomy is a medical procedure which uses a laser to create a small hole in the iris to relieve pressure suspected of

4.    <u>The ALJ's Consideration of Dr. Schaffzin's opinions</u>

The ALJ found the opinion of Dr. Schaffzin's to be entitled to significant persuasive value.  The ALJ articulated the following reasoning to support his consideration of Dr. Schaffzin's opinion:

> At the hearing, Dr. Shaffzin [sic] confirmed the claimant does not have a physiological vision impairment. He agreed with Dr. Hander's statement in Exhibit 3A that there is no objective evidence of organic pathology to account for vision loss, and findings are most consistent with malingering or functional vision loss. Dr. Schaffzin concluded functional vision loss is the most likely of these two possibilities. As a result of the condition, Dr. Shaffzin concluded the claimant should not climb ladders, ropes, or scaffolds because of her perception that she has vision problems. Dr. Shaffzin noted the record did not support physiological vision impairment. That is, the objective evidence did not show anything organically abnormal. Dr. Shaffzin declined to extend additional functional limitations, as he noted the most thorough and detailed examination – completed by an ophthalmologist – demonstrated no physiologic problems with vision. Dr. Schaffzin explained that the neuro-ophthalmology exam at Exhibit 3F is the most reliable evidence in the file related to the claimant's vision because it was the most thorough exam in the file, it was performed by a sub-specialist with particular expertise related to the claimant's visual impairment, and most importantly, because the examiner performed validity testing, unlike other examiners in the file. In relation to Exhibit 3F's

---

causing pupillary blockages. *Laser Iridotomy*, Glaucoma Research Foundation, www.glacoma.org (December 11, 2025).

statement that further workup should be done,
Dr. Schaffzin opined that the record as it now stands, 6
years later, still does not contain any evidence supporting
any physiological vision loss. Dr. Shaffzin thoroughly
explained how this testing demonstrated the claimant had
better vision than she thought she did, outlining testing
techniques showing variability in her performance.
Dr. Shaffzin's opinion was supported by detailed testimony
subject to cross-examination. As an ophthalmologist, he has
specialized experience germane to the claimant's
impairments. Further, the examination in the record and
multiple references to the claimant driving, reporting no
blurry vision, and the like demonstrate his opinion is
consistent with the record. The assigned limitations in
climbing and exposure to hazards are consistent with the
claimant's perception of her vision loss, regardless of its
actual existence. Dr. Shaffzin's opinion earns significant
persuasive value.[52]

5.   <u>Analysis</u>

Plaintiff argues that the ALJ erred in both his assessment of

Dr. Schaffzin's opinons and in discounting the opinions of treating

sources Dr. Hanley and PA-C Kane and the opinions of examining

sources Dr. Ankuta and Dr. Morgan, as well as reviewing source

---

[52] AR 1354-1355.

Dr. Carstens.[53] The Court concludes that remand is warranted based upon the ALJ's reliance on Dr. Schaffzin's testimony.

Initially, the Court notes that Dr. Schaffzin's testimony was that Plaintiff's loss of vision was somatoform in nature.  In his decision the ALJ stated that he considered Listing 12.07, which addresses somatoform disorders.[54]  Although the ALJ appears to have acknowledged that Dr. Schaffzin opined that Plaintiff was not malingering and that her condition was somatoform in nature by noting that Listing 12.07 was applicable, the ALJ did not take any action to further develop the record as to the issue. The ALJ could have called a psychologist or psychiatrist to testify, or could have scheduled a consultative examination but did not.  More importantly, although the ALJ stated that he considered Listing 12.07, there was nothing in the decision that articulated his consideration of the listing.

Additionally, there is little in the record that indicates the ALJ's consideration of the findings of the February 2025 examination found

_____

[53] ECF No. 9.

[54] AR 1350.

at Exhibit 33F. The ALJ cited to the examination findings, citing that "[t]he claimant's generalized contraction of the visual field is rated as mild (Exhibit 33F, p. 5)."[55] While the report did characterize the contraction of the field of vision as "mild" it notes that the results showed dense defect beyond 0-5 degrees on the right and 5-10 degrees on the left.[56] More importantly, on the same page it was noted that there was anatomical angle narrowing that was "urgent/emergent" in severity.[57]

In his brief, the Commissioner argued that there was no harm in Dr. Schaffzin's failure to review the February 2025 examination, "particularly given that the February vision exam was unremarkable, and showed that glasses were not necessary and recommended only annual eye exams."[58] This statement is a mischaracterization of the report. First, the report did not indicate that glasses were not needed,

---

[55] AR 1350.

[56] AR 3143.

[57] *Id*.

[58] ECF No. 18, pg. 6 (citing Tr. 3143).

it indicated on the same page cited that "glasses [did] not improve

Plaintiff's vision very much", and stated that even with glasses,

Plaintiff's "visual acuity [is] much less than normal."[59]  This was not a

statement that Plaintiff did not need glasses but rather that glasses

would not be helpful despite the fact that vision correction was

necessary.

   While the ALJ did not misstate that no glasses were

recommended, he has taken the recommendation out of context.

Context is crucial as "treatment records must be viewed in light of the

overall diagnostic record."[60] Also, an ALJ may not cherry pick evidence

to support a conclusion while ignoring other competent evidence in the

record.[61]

---

[59] AR 3143.

[60] *Ghanim*, 763 F.3d at 1164.

[61] *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (cleaned up)

("Although it is within the power of the Secretary to make findings

concerning the credibility of a witness . . . , he cannot reach a

The Commissioner's statement that the February 2025 report recommended "only" annual eye exams was also erroneous.  While it is true that the report recommended annual eye examinations, it also recommended, on the same page cited, that Plaintiff be referred for an MRI of the brain with and without contrast, and that he be referred for a laser procedure known as a peripheral iridotomy to relieve eye pressure, and as noted above, the latter referral was designated as "urgent" due to the risk of glaucoma.[62] Even assuming that the finding that glasses were not necessary had been interpreted in context, simply referring to that recommendation and ignoring a recommendation for a an MRI of the brain and/or a referral for laser surgery is clearly consequential error. Neither the ALJ nor the Commissioner may "cherry-pick" innocuous findings, while ignoring far more serious ones.

The Court concludes that a remand is warranted for the ALJ to properly develop the record and to obtain expert opinion as to both the

_____

conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

[62] *Id.*

findings of the February 2025 examination and to clarify any issue regarding somatic components.  As noted above, the ALJ has several options available to him to develop the record.

**B.    Step Three (The Listings): Plaintiff establishes consequential error.**

As noted above, the ALJ erred at step three by failing to articulate his reasoning regarding consideration of Listing 12.07. Because the case has been remanded for development of the medical record, the Court will not address this issue other than to note this failure.

**C.    Other Issues Raised: The Court finds the issue moot.**

Because the Court has remanded the case for development of the medical record, the ALJ will be required to reconsider the other issues raised, including the medical opinions, and Plaintiff's subjective complaints.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or

simply to award benefits, is within the discretion of the court."[63] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[64]

The Court finds that further development is necessary for a proper disability determination. Here, the ALJ should properly articulate his consideration of the medical evidence and medical opinions and make findings at each of the five steps of the sequential evaluation process, including Step Three.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

---

[63] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[64] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at  595  ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 18**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 17th day of December, 2025.

_Edward F. Shea_

**EDWARD F. SHEA**
Senior United States District Judge